# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMETRIUS COOPER,

                      Plaintiff,

v.                                                                      OPINION & ORDER

JEFFREY MEYER, PATRICK GORMAN, and              16-cv-526-jdp
CORY SABISH,

                      Defendants.

---

Pro se plaintiff Demetrius Cooper, a state prisoner confined at the Waupun Correctional Institution (WCI), is proceeding on claims under the First and Eighth Amendments against defendants Jeffrey Meyer, Patrick Gorman, and Cory Sabish, WCI employees. He alleges that Meyer used excessive force when restraining him with handcuffs, that Gorman and Sabish failed to intervene despite witnessing the use of excessive force, that Meyer and Gorman demonstrated deliberate indifference to his mental health needs, that all three defendants demonstrated deliberate indifference to his medical need caused by Meyer's excessive force, and that Gorman later retaliated against him by placing a razor blade in him food. Several motions are ripe for a decision, including the parties' cross-motions for summary judgment. Each of Cooper's claims turns on genuinely disputes issues of material fact, so I will deny both summary judgment motions.

PRELIMINARY MATTERS

A. **Motion for leave to amend**

Cooper moves for leave to amend his complaint to add state-law claims of negligence, battery, and attempted homicide. Dkt. 121. Under Federal Rule of Civil Procedure 15, the court should freely give leave to amend a complaint when justice so requires. "[L]eave to amend need not be given if there is an apparent reason not to do so, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, the issue is undue delay. Cooper filed his motion to amend his complaint to include claims of negligence, battery, and attempted homicide shortly before the parties' cross-motions for summary judgment were fully briefed. He offers no explanation for why he waited so long to bring these claims. To allow him to amend his complaint now, when summary judgment motions are briefed, would prejudice defendants and contradict the purpose of a complaint, which is to "give the defendant fair notice" of the plaintiff's claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Were I to grant Cooper's motion, I would have to screen his proposed new claims under 28 U.S.C. § 1915A, just as I screened the claims in his original complaint. Cooper's new claims are under state law, but he does not allege that he has filed a notice of his claims with the state attorney general, as required by Wisconsin's notice-of-claim statute, Wis. Stat. § 893.82(3), which is a jurisdictional requirement for state-law claims against state employees. *Ibrahim v. Same*, 118 Wis. 2d 720, 726, 348 N.W.2d 554, 557–58 (1984). So I would have to allow

Cooper a short time to supplement his complaint explaining whether he has complied with the notice-of-claim statute, which would cause further delay. Also, attempted homicide is a criminal offense in Wisconsin. Cooper offers no authority that permits him to recover damages in a civil suit for attempted homicide, and I can think of none. In any event, I would not allow Cooper to proceed on this claim because he brings it so late. Cooper's motion for leave to amend his complaint is denied.

B. **Motion to compel**

Cooper moves to compel defendants to respond to his discovery requests under Federal Rule of Civil Procedure 37. Dkt. 72 and Dkt. 83. Defendants indicate that they have since responded to Cooper's requests. One of Cooper's requests was for a list of all WCI inmates housed on A Range on February 4, 2016. Defendants initially responded to this request by sending Cooper a list of inmates housed on A Range on February 2, 2016. They have realized their error and have now supplied Cooper with a list for February 4, 2016. That list was processed on the morning of February 5, 2016, but defendants explain that it reflects cell assignments on February 4. So it appears that defendants have adequately responded to Cooper's requests.

Cooper complains that some of defendants' responses are untruthful. Rule 37 does not concern the content of responses; it allows parties to move to compel a response when a party fails to respond entirely or provides and incomplete or evasive response. Cooper has not shown that defendants failed to respond or provided an incomplete or evasive response to any of his requests, so I will deny his motions to compel as moot.

**C. Motion for sanctions**

Cooper moves the court to impose sanctions on defendants' counsel for deliberately sending him the February 2 housing list despite knowing that he wanted the February 4 housing list. Dkt. 103. Defendants' counsel admitted his error and promptly corrected it. Cooper has suffered no prejudice. I will not impose a sanction for this error.

Cooper also moves the court to impose sanctions on defendants Meyer and Gorman. Dkt. 102. He contends that they committed perjury. He points to an inconsistency between defendants' answer to his amended complaint, which states that "Gorman and Meyer together" escorted Cooper back to his cell, Dkt. 42, ¶ 23, and Gorman's and Meyer's later declarations, which indicate that only Meyer escorted Cooper back to his cell. *See* Dkt. 74, ¶ 31 ("[Meyer] removed Cooper from the strip cell to escort him back to his regular cell . . . ."); Dkt. 76, ¶ 12 ("Sometime later, Cooper was escorted back to his cell, however, [Gorman] was not one of the officers who escorted him . . . ."). Human memory is not infallible. Cooper may point out these inconsistencies in an attempt to impeach Meyer and Gorman, but I will not sanction them for inconsistent statements about their memories of a detail that is likely immaterial anyway.

**D. Motion for default**

Cooper moves for entry of default against defendants. Dkt. 126. The clerk's office is responsible for entering default under Federal Rule of Civil Procedure 55(a) but has not done so in this case because default is inappropriate.

Rule 55(a) provides that default must be entered against a party against whom affirmative relief is sought, but who fails "to plead or otherwise defend." Defendants have vigorously defended themselves, so default is inappropriate. Cooper argues that defendants failed to reply in support of their summary judgment motion by the deadline. This is not true:

4

defendants filed their reply materials on August 21, well before the deadline of September 15. *See* Dkt. 90 ("Defendants' reply deadline . . . is extended to September 15, 2017."); Dkts. 123–25. And even if defendants had not replied, default would still be inappropriate. Cooper's motion for entry of default is denied.

E. **Motions concerning criminal prosecution**

Cooper filed a motion asking the court to assist him in pressing criminal charges against Meyer and Gorman. Dkt. 118. He has since successfully filed a John Doe petition in Wisconsin state court, which has been referred to the Dodge County District Attorney, so it appears he no longer needs assistance. *See* Dkt. 130 and Dkt. 130-1. Cooper also moves the court to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over criminal charges against Meyer and Gorman or to "allow the jury to decide" if Meyer and Gorman should face criminal charges. Dkt. 118, ¶ 12, and Dkt. 127. Section 1367 allows for supplemental jurisdiction over state-law civil claims, not criminal prosecutions. No federal court can assume jurisdiction over state criminal proceedings. And "courts have long held that a civil litigant may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties [because] civil plaintiffs lack standing to make such claims and . . . such relief simply is unavailable in a civil lawsuit." *Miller v. Zandieh*, No. 15-cv-34, 2015 WL 999208, at *6 (M.D. Penn. Mar. 5, 2015) (collecting cases). Federal courts cannot interfere with state criminal prosecutions. *See Younger v. Harris*, 401 U.S. 37, 41 (1971). I will deny Cooper's motions concerning criminal prosecution.

SUMMARY JUDGMENT

A. **Undisputed facts**

The following facts, except where noted, are undisputed.

1. **February 4, 2016**

On February 4, 2016, defendants Jeffrey Meyer, Patrick Gorman, and Cory Sabish were all working at the Waupun Correctional Institution (WCI), where plaintiff Demetrius Cooper was incarcerated. Gorman and Meyer were correctional officers; Sabish was a captain.

The parties agree on the broad outline of the day's events. Cooper, who was in his cell in segregation, asked Meyer to place him in observation because he might harm himself if left alone in his cell. Meyer asked Gorman to help him escort Cooper to a strip cell to wait for a Psychological Services Unit (PSU) consultation. Under Division of Adult Institutions (DAI) Policy 500.70.24, PSU staff, doctors, and wardens may approve placement of an inmate in observation; correctional officers like Meyer and Gorman may not. Supervisors such as Sabish may approve observation placement only if PSU staff "are not immediately available for consultation." Dkt. 74-1, at 2. When removing an inmate from his cell, WCI staff usually apply a tether cuff to the inmate's wrist; the other end is secured to the cell door. Then, the inmate places his hands behind his back and the staff member applies handcuffs to the inmate's wrists and removes the tether cuff. Meyer followed this procedure while Gorman was present. Gorman then placed leg restraints on Cooper. Meyer escorted Cooper to a strip cell, and applied the tether cuff to Cooper's wrist. Cooper complained that the handcuffs were too tight. At some point, Sabish checked the handcuffs and did not loosen them. Eventually, Cooper asked to go back to his cell and to see a nurse about his wrist. He was escorted back to the segregation cell and told to submit a Health Services Request (HSR). Cooper did so that afternoon; he

submitted follow-up HSRs on February 5 and 7. At 9 a.m. on February 8, Cooper was seen by a nurse. The nurse noted an abrasion measuring one-half inch by one-eighth inch on his left wrist and provided Cooper with antibiotic ointment. She did not note any other redness or swelling. At 9:45 a.m., a PSU staff member noted that Cooper had a "cut" on his wrist that "looked infected." Dkt. 75-1, at 36. Cooper has complained of weakness, pain, and tingling in his wrist since then.

But the parties dispute many of the material details of the day's events. According to Cooper, when he asked to be placed in observation, Meyer said, "I don't have time for your suicidal bullshit." Dkt. 58, ¶ 4. After Cooper said he was serious about his request, Meyer asked Gorman to help escort Cooper to the strip cell. After Cooper placed his hands behind his back, Meyer twisted his wrist, slammed his hands against the trap door, and applied the handcuffs so tightly that they crushed Cooper's wrists and caused his hands to become numb. Cooper complained that the handcuffs were too tight, but Meyer refused to loosen them. Instead, Meyer told Cooper, "Get on your fucking knees." Dkt. 109, ¶ 11. Cooper did so, and Gorman placed the leg restraints on him. Meyer escorted Cooper to the strip cell, and applied the tether cuff very tightly, too. Despite Cooper's continued complaints about the handcuff fit, Meyer and Gorman never checked the handcuffs. Meyer told Cooper, "I fucking warned you not to fuck the rest of my day up with your suicidal bullshit[.] Now you're going to deal with mine." *Id.* ¶ 13. Cooper kept "screaming and begging" for them to loosen the handcuffs, but they refused. *Id.* ¶ 19. Nor did they contact PSU. After 30 minutes, Cooper asked to return to his cell because he was in so much pain. Sabish checked his handcuffs and said, "he's only bleeding a little bit, he'll survive, leave him there a while." *Id.* ¶ 18. At some point, Meyer and Gorman told Cooper that he would not be seen by PSU. But they still didn't take him back to his cell.

7

Several hours after Cooper's initial request for observation, Gorman presented Cooper with a choice: continue to request observation and remain in handcuffs, or go back to his cell. Cooper asked to see a nurse about his wrist, which he believed to be broken. Sabish, Gorman, and Meyer all refused his request. Instead, they told Cooper to submit an HSR. Gorman then returned Cooper to the segregation cell, where he removed the handcuffs and leg restraints. Once in his cell, Cooper attempted to hang himself.

Defendants offer a different version of events. According to them, Meyer didn't twist Cooper's wrist, slam Cooper's hands, or apply the handcuffs too tightly. When Cooper complained about the handcuffs, Meyer checked the fit and determined that they weren't too tight because he could put the tip of his finger between Cooper's wrist and the cuff, although he did see a "superficial scratch which barely broke the skin on Cooper's wrist." Dkt. 74, ¶ 29. Meyer also asked Gorman and Sabish to check; they agreed that the fit was proper. Meyer told Cooper that the handcuffs and tether cuff would remain on until the PSU consultation, but that if Cooper no longer needed observation, Meyer would return him to his cell. Meyer then relayed Cooper's request for observation to PSU. After a while, Cooper told Meyer that he "didn't need observation anymore and wanted to go back to his cell." *Id.* ¶ 20. Meyer doesn't remember exactly when this happened, but notes that a PSU consultation usually occurs within 30 minutes to an hour after an inmate requests observation. Meyer contacted PSU and was approved to return Cooper to his cell; he did so. While removing Cooper's handcuffs and tether cuff, Meyer saw "a slight redness" on one of Cooper's wrists, but no other signs of injury. *Id.* ¶ 33. Because Cooper was moving his wrists, Meyer surmised that Cooper was not suffering from a severe injury. Cooper asked to see a nurse. Meyer described his observations to a nurse, who

agreed that Cooper did not need emergency medical treatment. Meyer instructed Cooper to submit an HSR regarding his wrist pain.

   2. **March 8, 2017**

Just before lunch on March 8, 2017, Cooper was discussing this lawsuit with another inmate while Gorman was passing out lunch trays. Later, when Gorman and Correctional Officer Jason Rosenthal collected his lunch tray, Cooper notified them that he had found a razor blade in his soup and spit it out. He gave the razor blade to Rosenthal on his tray; Rosenthal set the tray aside and continued to collect trays from other inmates. When Rosenthal was done, he notified Captain Kyle Tritt and the Health Services Unit (HSU) about the incident. He then took Cooper to HSU. A nurse there noted small cuts on Cooper's tongue and a slight cut on his lower gum. No treatment was required.

Again, the details are disputed. According to Cooper, while passing out trays, Gorman said, "You won't get a chance to enjoy any of it." Dkt. 38, ¶ 3. Once Cooper told Rosenthal and Gorman about the razor blade, Gorman told Rosenthal, "I put that there hoping [Cooper would] swallow it." *Id.* ¶ 6. Defendants, unsurprisingly, dispute this; they say that Gorman did not make these statements and did not place a razor blade in Cooper's soup.

**B. Analysis**

Cooper is proceeding on the following claims: (1) an Eighth Amendment excessive force claim against Meyer concerning the February 4 incident; (2) Eighth Amendment failure-to-intervene claims against Gorman and Sabish concerning the February 4 incident; (3) Eighth Amendment deliberate indifference to mental health needs claims against Meyer and Gorman concerning the February 4 incident; (4) Eighth Amendment deliberate indifference to medical needs claims against Meyer, Gorman, and Sabish concerning the February 4 incident; (5) a

9

First Amendment retaliation claim against Gorman concerning the March 8 incident; and (6) an Eighth Amendment excessive force claim against Gorman concerning the March 8 incident. Defendants move for summary judgment on all of Cooper's claims; Cooper moves for summary judgment on the deliberate indifference to mental health needs claims.

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party cannot create a genuine dispute, summary judgment against that party is appropriate. "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)). In this case, Cooper bears the burden of proving defendants' liability under 42 U.S.C. § 1983.

   1. **Excessive force**

Cooper contends that Meyer subjected him to excessive force on February 4, 2016, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. To withstand summary judgment, Cooper must point to admissible evidence that Meyer applied

force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). The factors relevant to this determination include (1) why force was needed; (2) how much force was used; (3) the extent of the injury inflicted; (4) whether the defendant perceived a threat to the safety of staff and prisoners; and (5) whether efforts were made to temper the severity of the force. *Whitley*, 475 U.S. at 321.

Here, a reasonable juror could find that Meyer applied force to Cooper maliciously and sadistically. It's undisputed that Meyer needed to place handcuffs on Cooper's wrists. But Cooper adduces evidence in the form of his own testimony and medical records showing at least some injury that Meyer twisted his wrist, slammed his hands against the trap door, and applied the handcuffs very tightly. Cooper says this extreme force caused him great pain at the time and that the pain continued for months after the incident. I will deny defendants' summary judgment motion on this claim.

2. **Failure to intervene**

Cooper contends that Gorman and Sabish failed to intervene to prevent Meyer's use of excessive force against him on February 4, 2016, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. To withstand summary judgment on these claims, Cooper must point to admissible evidence that Gorman and Sabish has a "realistic opportunity to step forward and prevent [Meyer] from violating [Cooper's] right through the use of excessive force but fail[ed] to do so." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (quoting *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000)).

Defendants' sole argument for summary judgment on this claim is that Meyer did not use excessive force against Cooper. If that is true, then there was nothing for Gorman and Sabish to prevent. But as discussed above, a reasonable juror could find that Meyer used excessive force on Cooper. A reasonable juror could also find that Gorman and Sabish saw Meyer apply excessive force and heard Cooper's complaints that the handcuffs were too tight and had a reasonable opportunity to intervene, but failed to do so. So I will deny defendants' motion for summary judgment on these claims.

### 3. Deliberate indifference to mental health needs

Cooper contends that Meyer and Gorman were deliberately indifferent to his mental health needs on February 4, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. To prevail on these claims, Cooper must show that he "suffered an objectively serious harm that presented a substantial risk to his safety" and that Meyer and Gorman knew of and "intentionally disregarded the risk." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). A risk of suicide is an objectively serious harm. *Id.* There's no dispute that Meyer and Gorman knew about that risk. The sole question here is whether their response was appropriate or whether they intentionally disregarded the risk of suicide.

Drawing all inferences from the facts in Cooper's favor, a reasonable juror could find that Meyer and Gorman were deliberately indifferent to his mental health needs. Cooper adduces evidence that Meyer and Gorman refused to provide him with a PSU consultation or place him in observation and instead restrained him in a painful manner for several hours before returning him to his cell, where he attempted suicide. So I will deny defendants' summary judgment motion on these claims.

This is the sole claim that Cooper moves for summary judgment on. Drawing all inference from the facts in defendants' favor, a reasonable juror could find that Meyer and Gorman did not intentionally disregard Cooper's mental health needs. Defendants adduce evidence that Meyer and Gorman arranged for a PSU consultation so that Cooper could be placed in observation and that they ensured, through the use of restraints, that Cooper could not harm himself while waiting for the consultation. A reasonable juror could find that this treatment was appropriate. So I will deny Cooper's summary judgment motion on these claims, too.

4. **Deliberate indifference to medical needs**

Cooper contends that Meyer, Gorman, and Sabish were deliberately indifferent to his wrist injury on February 4. Again, to prevail on these claims, Cooper must show that he suffered an objectively serious harm and that defendants knew of and intentionally disregarded it. Delay in treatment may constitute deliberate indifference if the delay unnecessarily prolonged the plaintiff's pain. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015).

Drawing all inferences from the facts in Cooper's favor, a reasonable juror could find that defendants intentionally disregarded an objectively serious harm. Cooper had an abrasion on his wrist that, by the time he received medical care four days later, had become infected. Defendants knew about the abrasion and heard Cooper ask to see a nurse, but refused, causing a four-day delay in treatment and prolonged pain. So I will deny defendants' summary judgment motion on these claims.

5. **Retaliation**

Cooper contends that Gorman retaliated against him for filing this lawsuit by placing a razor blade in his soup on March 8, 2017, in violation of his First Amendment rights. To prevail

13

on his First Amendment retaliation claim, Cooper must show that: (1) he engaged in activity protected by the First Amendment; (2) Gorman took actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) the First Amendment activity was at least a "motivating factor" in Gorman's decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The filing of a lawsuit is protected by the First Amendment. *See Novoselsky v. Brown*, 822 F.3d 342, 355 (7th Cir. 2016).

Here, a reasonable juror could find that Gorman placed a razor blade in Cooper's soup in retaliation for filing this lawsuit. Defendants argue that the only evidence of Gorman's statements ("You won't get a chance to enjoy any of it" and "I put that [razor blade] there hoping [Cooper would] swallow it") are inadmissible "self-serving affidavits." Dkt. 79, at 16–17. This objection is frivolous: a party's own affidavit is sufficient to support his position "as long as it otherwise contains information that would be admissible if he were testifying directly." *Rooni v. Biser*, 742 F.3d 737, 740 (7th Cir. 2014). Besides, the affidavits Cooper adduces aren't his own, but those of other prisoners. *See* Dkt. 38 and Dkt. 39.

Defendants also cite *Babcock v. White,* which explained that courts "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995)). But there is no legitimate penological reason to place a razor blade in an inmate's soup, so no deference is due. Cooper adduces evidence sufficient to withstand summary judgment on this claim.

6. **Excessive force**

Finally, Cooper contends that Gorman's placing a razor blade in his soup also violated his Eighth Amendment right to be free from cruel and unusual punishment. Again, to withstand

14

summary judgment on this claim, Cooper must point to admissible evidence that Gorman applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6–7 (quoting *Whitley*, 475 U.S. at 320–21). A reasonable juror could find that Gorman placed a razor blade in Cooper's soup, cutting Cooper's mouth, which is the kind of unnecessary and wanton infliction of pain prohibited by the Eighth Amendment. I will deny defendants' motion for summary judgment on this claim.[1]

RECRUITMENT OF COUNSEL

Cooper has moved for assistance in recruiting counsel four times. I have denied each of his previous motions because he has not demonstrated that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his demonstrated ability to prosecute it, nor has he identified what tasks, specifically, he is unable to perform without counsel. Dkt. 10; Dkt. 22; Dkt. 24; Dkt. 61.

Now, Cooper renews his motion for the fifth time. Dkt. 105. He also moves for appointment of an expert. Dkt. 129. He points out that defendants have disclosed two medical professionals who may testify at trial. *See* Dkt. 88. Although both witnesses are expected to testify about the care and treatment provided to Cooper—a topic on which Cooper is perfectly able to address on his own—Cooper fears that they will provide expert testimony on medical and mental health treatment, too. Without counsel, Cooper cannot obtain an expert on these subjects.

---

[1] Because I am denying defendants' summary judgment motion in full, I will deny Cooper's motion for leave to file a surreply, Dkt. 128, as moot.

15

The crux of this case is a factual dispute that requires no expert testimony. A juror must simply decide who is telling the truth and who is lying. Expert testimony on medical and mental health treatment is unnecessary for either party. And Cooper has done a fair job of representing himself so far. There is no indication that a jury trial will exceed his abilities. So I will deny Cooper's motions for appointment of counsel and an expert. The case will continue to trial.

ORDER

IT IS ORDERED that:

1. Plaintiff Demetrius Cooper's motion for leave to amend his complaint, Dkt. 121, is DENIED.

2. Plaintiff's motions to compel, Dkt. 72 and Dkt. 83, are DENIED as moot.

3. Plaintiff's motions for sanctions, Dkt. 102 and Dkt. 103, are DENIED.

4. Plaintiff's motion for entry of default, Dkt. 126, is DENIED.

5. Plaintiff's motions for assistance in bringing criminal charges and asserting jurisdiction over criminal prosecutions, Dkt. 118 and Dkt. 127, are DENIED.

6. Plaintiff's motion for partial summary judgment, Dkt. 56, is DENIED.

7. Defendants' motion for summary judgment, Dkt. 73, is DENIED.

8. Plaintiff's motion for leave to file a surreply, Dkt. 128, is DENIED as moot.

9. Plaintiff's motion for assistance in recruiting counsel, Dkt. 105, is DENIED without prejudice.

10. Plaintiff's motion for appointment of an expert, Dkt. 129, is DENIED without prejudice.

Entered December 4, 2017.

                        BY THE COURT:

                        /s/

                        _____
                        JAMES D. PETERSON
                        District Judge