IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMETRIUS COOPER,

                Plaintiff,

v.

JEFFREY MEYER, PATRICK GORMAN, and
CORY SABISH,

                Defendants.

ORDER

16-cv-526-jdp

---

Pro se plaintiff Demetrius Cooper, a state prisoner confined at the Waupun Correctional Institution (WCI), is proceeding on claims under the First and Eighth Amendments against defendants Jeffrey Meyer, Patrick Gorman, and Cory Sabish, WCI employees. The trial in this case will begin on April 30, 2018.

This order addresses the several motions now pending before the court.

**A. Recruitment of counsel**

Cooper moves for recruitment of counsel for the sixth time. Dkt. 143. I have denied each of his previous motions because he had not demonstrated that his is one of those relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds his demonstrated ability to prosecute it, nor had he identified what tasks, specifically, he is unable to perform without counsel.

Cooper now identifies several tasks that counsel could help him with, including engaging in discovery, creating an exhibit list, locating witnesses, and explaining things to the jury. But Cooper has not shown that he is unable to perform these tasks without the assistance of counsel. In fact, Cooper has demonstrated that he *is* able to perform some of these tasks—

such as engaging in discovery, *see, e.g.*, Dkt. 165, and creating an exhibit list, *see* Dkt. 168—without counsel. Cooper reiterates that he has mental health problems and has access to only limited legal materials because he is often in segregation. As I have explained before, mental health conditions, a lack of education, and limited access to legal materials are, unfortunately, common among prisoners litigating in this court and are not alone reasons to recruit counsel. Finally, Cooper notes that he will be transferred to another institution at some point and, as a result, will lose the assistance of his jailhouse lawyer. Defendants have indicated that if Cooper is transferred before trial, their counsel will ensure that he is able to access his legal paperwork to prepare for trial. *See* Dkt. 149. And regardless whether he is transferred, he will not have another inmate's assistance at trial—and at this point, trial is the only thing left to do in this case: Cooper's claims have survived summary judgment and discovery is closed.

I do not take Cooper's hardship lightly. "Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). I must choose from "a sea of people lacking counsel, those who need counsel the most." *Id.* It does not appear that a jury trial will exceed Cooper's abilities. So I will deny Cooper's motion for assistance in recruiting counsel.

**B. Motion to strike affirmative defenses**

Cooper moves to strike several of defendants' affirmative defenses. Dkt. 164. Defendants indicate that they intend to pursue only one of those defenses at trial: they wish to introduce evidence that Cooper's "actions may have caused or exacerbated any injuries he claims from the wrist restraint placement." Dkt. 174, at 1. Cooper argues that defendants should be barred from asserting this defense because they "admitted Cooper did not have any

2

injuries before Meyer placed the handcuffs on." Dkt. 164, at 1. But that simply doesn't matter—it appears that defendants want to argue that Cooper's injuries were caused by his own actions *after* Meyer placed handcuffs on him. I see no reason to bar defendants from presenting evidence in support of that argument, so I will deny Cooper's motion to strike that affirmative defense. I will grant the remainder of the motion as unopposed.

**C. Request for a subpoena form**

Cooper wants to subpoena Dr. Desiree Grin. Dkt. 146. Grin noted that a cut on Cooper's wrist "looked infected," Dkt. 75-1, at 36, which is relevant to Cooper's claim that defendants were deliberately indifferent to his wrist injury. *See* Dkt. 131, at 13. Grin is a former WCI employee, and Cooper has had trouble locating her. I previously instructed Cooper to ask defendants to locate Grin for him. *See* Dkt. 142, at 13–14. It's not clear whether he's done so.

The court will not grant a request for a subpoena form unless the request is accompanied by an affidavit stating that the witness refuses to testify voluntarily, among other things. *See* Dkt. 20, at 42–43. Cooper has not submitted an affidavit supporting his request, presumably because he has been unable to contact Grin. It is Cooper's responsibility to complete the subpoena form and send it to the United States Marshal for service, *see id.* at 43, and he would not be able to do that without Grin's contact information. So I will deny his motion. But I will order defendants to assist Cooper in locating Grin. They must attempt to do so within seven days of the date of this order. If, after Cooper contacts her, Grin refuses to testify voluntarily, Cooper may renew his motion.

**D. Petition for writs of habeas corpus *ad testificandum***

Cooper requests writs of habeas corpus *ad testificandum* for Remo Daniels, Jermaine Smith Capoeira, Michael Ramos, Ryan Pruitt, and Deandrae Mayweathers, all prisoners at

3

WCI. Dkt. 132. Defendants have not opposed Cooper's request. In determining whether to grant a petition for a writ of habeas corpus *ad testificandum*, I must consider whether the prisoner's testimony is sufficiently important to outweigh "the costs and inconvenience of transporting a prisoner from his place of incarceration to the courtroom" and "any potential danger or security risk which the presence of a particular inmate would pose to the court." *Stone v. Morris*, 546 F.2d 730, 735–36 (7th Cir. 1976). Cooper states that each witness communicated their willingness to testify voluntarily when they signed their declarations, which Cooper adduced in support of his summary judgment motion, and he explains that each witness will testify consistent with the content of those declarations. In short, Ramos, Pruitt, and Mayweathers will testify about what they heard Cooper and defendants say during the February 4 incident; Daniels and Smith Capoeira will testify about what they heard Cooper, Gorman, and non-party Correctional Officer Jason Rosenthal say during the March 8 incident. (Most, if not all, of these statements appear to qualify for an exclusion or exception from the rule against hearsay.) Because these witnesses' declarations support Cooper's claims, I will grant the petition.

Cooper also asks to be allowed to meet with these incarcerated witnesses. Dkt. 148. He explains that he has not communicated with them since obtaining their declarations and wants to inform them of the date they are expected to testify at trial, "explain the court's expectations for courtroom behavior," and "refresh" their memories. *Id.* at 1. The witnesses will learn of the date they are expected to testify at trial when they are transferred to the court, and the court will inform them of its expectations, if necessary. Should the witnesses forget or misremember events while on the stand, Cooper may provide their prior written statements to them to refresh

4

their memories. There is no need to Cooper to meet with the witnesses before trial, so I will deny his motion.

E. **Discovery-related motions**

Cooper moves for an order compelling defendants to produce several categories of documents and information. Dkt. 152. Cooper was satisfied with defendants' responses to several of his requests, so only two appear to still be at issue. First, Cooper wants "any and all rules, regulations, and policies of the Wisconsin Department of Corrections about treatment, protocol, policies, [or] procedures for inmates that ha[ve] suicidal ideation or threats of self-harm." *Id.* at 1. Defendants already provided Cooper with copies of DAI Policy #500.70.24, "Clinical Observation," and DAI Policy #500.70.25, "Suicide Prevention in Adult Correctional Facilities." They have now provided him with a copy of the DAI Policy Index, as well. Cooper still wants more, but it doesn't appear that there are any other rules, regulations, or policies that apply. I will not compel defendants to produce material that doesn't exist.

Second, Cooper asks for "any and all excessive force complaints made by inmates against each defendant during th[eir] employment in the DOC." Dkt. 152, at 2. Defendants indicate that they reviewed inmate complaints concerning each defendant and found no affirmed complaints. There are some "dismissed inmate complaints" that were "deemed unfounded after investigation." Dkt. 161-1, at 3. Defendants object to providing those to Cooper, arguing that they are irrelevant and would be inadmissible at trial. Information "need not be admissible in evidence to be discoverable," but it must be relevant to a claim or defense and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Cooper argues that dismissed inmate complaints are relevant "for impeachment purposes" because he plans to ask each defendant "how many complaints of excessive force ha[ve] been filed about them." Dkt.

162, at 2. But *complaints* about defendants' use of excessive force are not relevant to Cooper's claims—only defendants' *actual* use of excessive force could be relevant to Cooper's claims (although likely inadmissible under Federal Rule of Evidence 404(b), as defendants point out). Affirmed complaints of use of excessive force would tend to make it more probable that defendants actually used excessive force, but there are no affirmed complaints concerning defendants in this case. Unfounded complaints—that is, complaints that were investigated and deemed to be untrue—would not tend to make it more probable that defendants actually used excessive force. (I can imagine some situations in which unfounded complaints could be relevant evidence—perhaps if the claim were that prison officials were routinely dismissing complaints as unfounded without investigating them—but that's not the case here.) So I will deny Cooper's motion to compel.

Cooper also moves for sanctions. Dkt. 154. He argues that defendants should have produced an emergency call log in response to Cooper's initial request for "all written statements . . . identifiable as reports about the incident on 2-4-16, made by prison and civilian employees or the Department of Corrections and prisoner witnesses." Dkt. 154-1, at 1. Defendants say they didn't interpret "written reports" to include the emergency call log. I agree that defendants' initial nondisclosure was substantially justified, and because they disclosed the call log once Cooper requested it specifically, sanctions aren't called for. And even if defendants should have produced the emergency call log sooner, I would not sanction them because Cooper has not identified any expenses incurred in making his motion. Sanctions under Federal Rule of Civil Procedure 37(a)(5) are limited to "the movant's reasonable expenses incurred in making the motion, including attorney's fees." Cooper appears pro se, so he has not incurred any attorney fees. Due to this court's e-filing program, he did not pay for

postage. Perhaps he paid for a few dozen sheets of paper, although Wisconsin institutions sometimes provide paper for free. In any event, because Cooper has not identified any expenses incurred, I will deny his motion for sanctions as moot.

Finally, Cooper recently filed a second motion to compel, indicating that he sent additional discovery requests to defendants on January 10 and that defendants refused to respond to the requests because discovery closed on January 19. Dkt. 165. In response to Cooper's request, defendants double-down on their objection. They argue that Cooper "was required to propound discovery requests to defense counsel more than 30 days prior to the discovery deadline in this case to allow defendants the time they are entitled to respond." Dkt. 174, at 2. They cite no authority to support their argument, and I would not deny a motion to compel discovery responses solely because the request was sent fewer than 30 days before the cut off, at least not when the requesting party appears pro se: the court's standard pretrial conference order in pro se cases does not explicitly require discovery requests to be served 30 days before the close of discovery. *See* Dkt. 20, at 8. If timeliness was defendants' only objection to Cooper's January 10 discovery requests, they should provide their responses to Cooper within seven days of the date of this order. But Cooper does not explain what discovery he still seeks from defendants, and without that information, I cannot grant a motion to compel, as I have no way of determining whether the requested information falls within the scope of discovery. *See* Fed. R. Civ. P. 26(b)(1). So I will deny Cooper's second motion to compel discovery. If defendants do not respond to Cooper's requests, Cooper may renew his motion, but he will have to explain what information he has requested from them.

## F. Motion concerning legal loan

Cooper asks the court for an order instructing the WCI Business Office to provide him with copies of jury instructions that he has requested and offered to pay for with his legal loan, as his request was previously denied as being beyond the bounds of the legal loan program. Dkt. 176. Defendants have responded by indicating that their counsel has directed the WCI Business Office to provide copies of the materials Cooper requested and any similar materials he requests in the future, as these materials fall within the bounds of the legal loan program. Dkt. 177. Defendants explain that Cooper need only "provide a concise explanation of what materials he wants copied and where they are located." *Id.* at 1. In reply, Cooper complains that he did explain what copies he wanted and where the materials were and asks me to "issue an order to . . . prevent so many hurdles in this case and award Cooper $5,000 as reasonable expenses for obtaining this order." Dkt. 178.

I will deny Cooper's motion as moot. It appears that WCI officials now know what materials may be copied with a legal loan, so an order compelling them to make copies is unnecessary. The request that Cooper identify what materials he wants copied and where they may be found is eminently reasonable; I cannot know without further information whether Cooper's first request was precise enough, nor does it matter. What matters is whether Cooper is able to obtain copies of jury instructions and other trial preparation materials going forward, and for now, it appears that he is.

## G. Remaining motions

I will address the parties' motions in limine, *see* Dkt. 139 and Dkt. 156, and Cooper's objections to defendants' exhibits, *see* Dkt. 164 and Dkt. 167, at the final pretrial conference.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for assistance in recruiting counsel, Dkt. 143, is DENIED.

2. Plaintiff's motion to strike affirmative defenses, Dkt. 164, is GRANTED as to qualified immunity and discretionary immunity and DENIED as damages caused by plaintiff's actions.

3. Plaintiff's request for a subpoena form, Dkt. 146, is DENIED.

4. Within seven days of the date of this order, defendants must attempt to assist plaintiff in locating Dr. Desiree Grin.

5. Plaintiff's petition for writs of habeas corpus *ad testificandum*, Dkt. 132, is GRANTED.

6. Plaintiff's motion to meet with incarcerated witnesses, Dkt. 148, is DENIED.

7. Plaintiff's motions to compel discovery, Dkt. 152 and Dkt. 165, are DENIED.

8. Within seven days of the date of this order, defendants should provide their responses to any of plaintiff's discovery requests for which timeliness was their only objection.

9. Plaintiff's motion for sanctions, Dkt. 154, is DENIED as moot.

10. Plaintiff's motion for an order regarding his legal loan, Dkt. 176, is DENIED as moot.

11. The clerk of court is directed to issue writs of habeas corpus *ad testificandum* for the attendance of plaintiff Demetrius Cooper and witnesses Remo Daniels, Jermaine Smith Capoeira, Michael Ramos, Ryan Pruitt, and Deandrae Mayweathers at trial beginning on April 30, 2018. Plaintiff and the witnesses should arrive at the courthouse no later than 8 a.m.

Entered March 19, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge